IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HEAVY IRON OILFIELD SERVICES, )
L.P., *a Pennsylvania Limited Partnership*, )
              Plaintiff, )
) Civil Action No. 14-39
  vs. ) Magistrate Judge Maureen P. Kelly
)
MOUNTAIN EQUIPMENT OF NEW ) Re: ECF No. 3
MEXICO, INC., *a New Mexico corporation,* )
              Defendant. )

## OPINION AND ORDER

**KELLY, Magistrate Judge**

Plaintiff Heavy Iron Oilfield Services, L.P. ("Plaintiff"), has brought this contract action against Defendant Mountain Equipment of New Mexico ("Defendant"), relative to Plaintiff's purchase of equipment from Defendant that allegedly failed to meet industry standards thereby rendering the equipment useless for their intended purpose.

Presently before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("the Motion"), filed pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 3.[1] For the reasons that follow, the Motion will be denied.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, Plaintiff is in the business of providing "oil and gas field services," and Defendant is in the business of providing "oil and gas-related equipment for well testing and flow back services." ECF No. 1-3, ¶¶ 5, 6. In particular, Defendant sells "sand traps" which are used in the oil and gas industry "to protect downstream equipment by removing sand from oil and gas." Id. at ¶ 9. Plaintiff alleges that it purchased two sand traps from Defendant in June of 2011, and another two in December of 2012. Id. at ¶¶ 7, 8.

---

[1] Defendant also sought dismissal for insufficient service of process in the Motion but has since withdrawn that issue from consideration. See ECF No. 7.

According to Plaintiff, each sand trap contains a pressure vessel that must meet the standards established by the American Society of Mechanical Engineers ("ASME"), and be certified by the National Board so that operators can comply with applicable regulations and use the sand traps for their intended purpose. Id. at ¶¶ 10, 11. Plaintiff contends that Defendant was not only generally aware that pressure vessels used in sand traps need to be ASME compliant and certified, but that Defendant had specific knowledge that Plaintiff required ASME compliant and certified pressure vessels as evidenced by the invoices for the purchase of the sand traps generated by Defendant which reflect those requirements. Id. at ¶¶ 11, 12. Nevertheless, following delivery of, and payment for, the sand traps, Plaintiff was notified that the pressure vessels used in the sand traps do not comply with ASME standards and are not certified by the National Board.[2] Id. at ¶¶ 13, 15, 17. Plaintiff alleges that it is consequently unable to use the sand traps for their intended purpose and requested that Defendant either refund the purchase price of the sand traps or replace them with ones that are ASME compliant and certified by the National Board. Id. at ¶¶ 19-21. Defendant, however, has apparently refused to honor either request. Id. at ¶ 21.

Plaintiff filed the instant Complaint on December 10, 2013, in the Court of Common Pleas of Allegheny, Pennsylvania, and on January 8, 2014, Defendant removed the case to this Court based on diversity.[3] See ECF No. 1. In the Complaint, Plaintiff brings claims against Defendant for breach of contract (Count I); breach of express warranty (Count II); breach of the

---

[2] The pressure vessels were apparently manufactured by Wadsworth Industries, LLC, which, according to Plaintiff, has admitted to Defendant that the pressure vessels used in the sand traps are not ASME compliant or board certified. ECF No. 1-3, ¶¶ 14, 18.

[3] It is undisputed that Plaintiff is a Pennsylvania Limited Partnership with its principal place of business in McDonald, Pennsylvania, and Defendant is a New Mexico corporation with its principal place of business in Albuquerque, New Mexico. ECF No. 1, ¶¶ 1, 6-10; ECF No. 1-3, ¶¶ 1, 2. It is also undisputed that the amount in controversy exceeds the requisite $75,000.00 threshold. ECF No. 1, ¶¶ 12-15; ECF No. 1-3, ¶ 13.

implied warranty of merchantability (Count III); and breach of implied warrant of fitness for a particular purpose (Count IV). ECF No. 1-3.

Defendant filed the instant Motion on January 15, 2014, to which Plaintiff responded on February 3, 2014. ECF Nos. 3, 11. Defendant filed a reply brief in support of the Motion on February 18, 2014, ECF No. 13, rendering the Motion ripe for review.

## II. STANDARD OF REVIEW

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the burden is on the plaintiff to "prov[e] by affidavits or other competent evidence that jurisdiction is proper." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009), *quoting* Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1302 (3d Cir. 1996). The plaintiff, however, need only establish a prima facie case of personal jurisdiction "by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (internal quotation and citations omitted). See Saudi v. Acomarit Maritimes Services, S.A., 245 F. Supp. 2d 662, 667 (E.D. Pa. 2003), *aff'd*, 114 F. App'x 449 (3d Cir. 2004). Although the plaintiff is entitled to have the allegations set forth in the complaint taken as true and all factual disputes drawn in its favor, the complaint must nevertheless contain "specific facts" rather than vague or conclusory assertions to support a finding that the requisite contacts exist. Marten v. Godwin, 499 F.3d 290, 298 (3d Cir. 2007).

## III. DISCUSSION

Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, a federal district court sitting in diversity has personal jurisdiction over a non-resident defendant only to the extent that the laws of the forum state permit it. Under Pennsylvania's long-arm statute, a court may

3

exercise personal jurisdiction over a non-resident defendant which "directly or by an agent . . . [t]ransact[s] any business in this Commonwealth." 42 Pa. C.S. § 5322(a)(1). Transacting business includes "[t]he shipping of merchandise directly or indirectly into or through this Commonwealth." 42 Pa. C.S. § 5322 (a)(1)(iii). The statute also provides that personal jurisdiction may only be exercised to the extent it comports with the due process clause of the Fourteenth Amendment to the United States Constitution. 42 Pa. C.S. § 5322 (b). See Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001).

It cannot be disputed that Defendant in this case shipped merchandise into Pennsylvania and thus transacted business here. The question remains, however, whether the exercise of personal jurisdiction over Defendant would comport with due process.

To assert personal jurisdiction over a defendant, due process requires: (1) that the defendant have "minimum contacts" with the forum state; and (2) that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." Remick v. Manfredy, 238 F.3d at 255, *quoting* International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). "[M]inimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Id., *quoting* Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 109 (1987).

Personal jurisdiction may be invoked over a non-resident defendant on the basis of either general or specific jurisdiction. General jurisdiction is appropriate when the defendant's contacts with the forum are "continuous and systematic" and when the cause of action "arises from the defendant's non-forum related activities." Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 151 (3d Cir. 1995). In contrast, specific jurisdiction, which is

4

at issue here, is properly exercised when the plaintiff's cause of action arises from the defendant's forum-related activities, "such that the defendant 'should reasonably anticipate being haled into court there.'" Id., *quoting* World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297 ("foreseeability . . . is critical to the due process analysis"). See also Remick v. Manfredy, 238 F.3d at 255. "[S]pecific jurisdiction is not established if the non-resident defendant's conduct in the forum is 'random, isolated or fortuitous.'" Planet Goalie, Inc. v. Monkeysports, Inc., 2011 WL 3876178, at *3 (M.D. Pa. Sept. 1, 2011), *quoting* Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984).

> Determining whether specific jurisdiction exists involves a three-part inquiry. . . . First, the defendant must have "'purposefully directed' his activities" at the forum. . . . Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. . . . Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" . . . Because this analysis depends on the relationship between the claims and contacts, we generally evaluate specific jurisdiction on a claim-by-claim basis.

Marten v. Godwin, 499 F.3d at 296 (internal citations omitted).

Defendant argues that specific personal jurisdiction is lacking because there is no evidence that it purposefully directed activities at Pennsylvania. Specifically, Defendant points to the fact that it does not solicit business in Pennsylvania; that it does not direct any business activities toward Pennsylvania customers or residents; that at no time did a representative or agent of Defendant travel to Pennsylvania to perform contract negotiations or services; that it was Plaintiff that solicited business from Defendant in New Mexico; that Defendant did not engage in any extensive negotiations or contacts with Plaintiff in Pennsylvania; and that Defendant performed all of its contract work in New Mexico. Defendant argues an isolated sale is insufficient to overcome these facts and does not establish the necessary minimum contacts for the exercise of personal jurisdiction. The Court disagrees.

5

Although the United States Supreme Court has found that a contract alone does not "*automatically* establish sufficient minimum contacts in the other party's home forum," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) (emphasis added), it has also found that singular contact with a forum state supports the exercise of specific jurisdiction over a defendant where the nature and the quality of the contact provides a "substantial connection with the forum. Id. at 475 n.18. See Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d at 151; One World Botanicals LTD v. Gulf Coast Nutritionals, Inc., 987 F. Supp. 317, 323 (D.N.J. 1997). See also Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1121 (W.D. Pa. 1997) (noting that the focus is on the quality of the defendant's contacts rather than the quality). "[I]t is necessary that the defendant "deliberately targeted" the forum. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007). Thus, single or occasional acts related to the forum may not be sufficient to establish jurisdiction if their nature and quality is so attenuated or isolated so as to render the foreseeability of litigation in the forum slight. Burger King Corp v. Rudzewicz, 471 U.S. at 475 n.18. See One World Botanicals LTD v. Gulf Coast Nutritionals, Inc., 987 F. Supp. at 323.

In the instant case, although Defendant's contacts with Pennsylvania are not numerous, the nature and quality of the contacts are such that this Court is able to find that Defendant purposefully directed its activities at Pennsylvania. Specifically, the Court finds that having shipped the sand traps to Plaintiff in Pennsylvania -- not once, but twice -- Defendant has targeted Pennsylvania.[4] Indeed, the United States District Court for the Eastern District of

---

[4] Although Defendant makes much of the fact that the second set of sand traps purchased by Plaintiff was shipped to West Virginia, rather than Pennsylvania, Plaintiff has represented, and Defendant does not dispute, that in order to reduce the freight cost, Plaintiff and another company located in Fairmont, West Virginia that had also purchased equipment from Defendant, coordinated their deliveries. ECF No. 11-1, p. 5. Thus, while the sand traps manufactured for Plaintiff may have made a stop in West Virginia, before arriving at their ultimate destination in Pennsylvania, that fact does not alter the fact that Defendant shipped the merchandise to Pennsylvania.

6

Pennsylvania has recently found that a single shipment of a machine to Pennsylvania was sufficient to find that the defendant directly targeted this forum thereby satisfying the purposeful availment prong of the specific jurisdiction analysis. Xia Zhao v. Skinner Engine Co., 2012 WL 5451817, at **6, 8 (Nov. 8, 2012). See Merced v. Gemstar Group, Inc., 2011 WL 5865964, at *4 (E.D. Pa. Nov. 22, 2011) (finding that by knowingly shipping their products into Pennsylvania on at least three occasions, for which they obtained an economic benefit in Pennsylvania, the defendants purposefully availed themselves of the privilege of conducting activities within the forum State and could have reasonable anticipated being haled into court in Pennsylvania); Chea v. Fette, 2004 WL 220866, at *3 (E.D. Pa. Jan. 7, 2004) (finding that German manufacturer's authorization to its exclusive distributor in the United States to sell and deliver a P-3000 model tablet press to a company located in Philadelphia, Pennsylvania, was sufficient to find that the manufacturer had directed its activities at Pennsylvania); One World Botanicals LTD v. Gulf Coast Nutritionals, Inc., 987 F. Supp. at 324 (finding that the defendant's single shipment of its pet products to a distributor in New Jersey, in response to a solicitation for the product, was an action specifically directed toward New Jersey and that, by consummating the business transaction, the defendant could not now argue that it did not purposefully avail itself of the privilege of doing business in New Jersey). See also Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. at 1126, *citing* World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297 ("[w]hen a defendant makes a conscious choice to conduct business with a resident of a forum state, 'it has clear notice that it is subject to suit there'"). Accordingly, this Court finds that, by shipping the sand traps to Pennsylvania, Defendant purposefully directed its activities at this forum.

Nor do the cases relied upon by Defendant compel a different result. Plaintiff cites to Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products, Inc., 75 F.3d 147, and Hall-Woolford Tank Co. v. R.F. Kilns, Inc., 698 A.2d 80 (Pa. Super. 1997), for the proposition that "a contract with a nonresident defendant alone cannot establish the sufficient minimum contacts in a plaintiff's home state for the purposes of asserting personal jurisdiction." ECF No. 6, p. 7. In Vetrotex Certainteed Corp., however, the product was not shipped from, through or to Pennsylvania but was manufactured in Texas and shipped to California. Thus, the contract was indeed the only contact with the forum state. Similarly, in Hall-Woolford Tank Co., where the case turned on which party shipped the product, the Court found that the plaintiff's representation that the defendant's employees loaded the product onto the truck that then traveled to Pennsylvania was insufficient to show that the defendant purposefully directed its activities into Pennsylvania, particularly where the defendant had submitted an affidavit in which it was stated that it was the plaintiff who made all the shipping arrangements. Accordingly, like in Vetrotex Certainteed Corp., the only contact the defendant had with the forum state was, in fact, the contract. Here, however, in addition to the contract itself, Defendant shipped its merchandise to Pennsylvania on two occasions thus purposefully availing itself of the privilege of doing business in Pennsylvania.

Plaintiff also cites to Filipovich v. J.T. Imports Inc., 637 A.2d 314 (Pa. Super. 1994), in which the plaintiff, a Pennsylvania resident, was injured in a motorcycle accident and brought suit in Pennsylvania against the manufacturer of the helmet he was wearing at the time. The plaintiff, however, did not purchase the helmet in Pennsylvania nor did the accident occur in Pennsylvania. The court found that under these circumstances specific jurisdiction over the defendant, a California corporation, was lacking as the defendant did not target Pennsylvania

8

residents or indicate an intent to serve the Pennsylvania market by merely advertising its motorcycle helmets in national magazines and filling special orders placed by cycle shops in Pennsylvania for its customers. Id. at 316. Indeed, quoting from Kachur v. Yugo America, Inc., 632 A.2d 1297, 1301 (Pa. 1993), which in turn quoted Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. at 112, the court in Filipovich likened the facts in its case to that of a "stream of commerce" case, noting that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." Id. In contrast, Defendant in the instant case negotiated the contract with Plaintiff in Pennsylvania, mailed the invoice to Plaintiff in Pennsylvania, manufactured the sand traps specifically for Plaintiff located in Pennsylvania and shipped the sand traps to Plaintiff in Pennsylvania. Filipovich therefore is easily distinguishable from the case at bar and does not provide the basis for finding that personal jurisdiction over Defendant is lacking.[5]

---

[5] Defendant has not challenged the exercise of personal jurisdiction in its opening brief based on the second and third prongs of the specific jurisdiction analysis, *i.e.*, whether Plaintiff's claim arises out of or relates to Defendant's forum related activities and whether the exercise of jurisdiction comports with fair play and substantial justice. Nor did Defendant address Plaintiff's arguments with respect to the second and third prongs of the analysis in its reply brief. See ECF Nos. 6, 13. The Court therefore finds that Defendant has conceded that the Plaintiff's claims relate to its activities in Pennsylvania and that asserting jurisdiction would not offend the notions of fair play and substantial justice and has not addressed those issues.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is properly denied. Accordingly, the following Order is entered:

AND NOW, this 6th day of August, 2014, upon consideration of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Plaintiff's Response to the Motion and Defendant's Reply in Support of the Motion, IT IS HEREBY ORDERED that the Motion, ECF No. 3, is denied.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record Via CM-ECF